UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS BECERRA,<br><br>   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Respondent. | Civil No. 07-CV-1643-L<br>Criminal No. 06-CR-1295-L<br><br>**ORDER DISMISSING WITH PREJUDICE PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE** |

  On August 17, 2007, Petitioner Nicolas Becerra ("Petitioner") filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence. Respondent has filed a response and opposition, and Petitioner filed a reply. The Court has reviewed the record, the submissions of the parties, and the supporting exhibits and, for the reasons set forth below, will **DISMISS** Petitioner's motion.

...

...

...

**BACKGROUND**

On July 7, 2006, with Federal Defenders' Stephen D. Demik's assistance as his counsel, Petitioner signed a plea agreement with the United States Attorney for the Southern District of California.[1] Under the terms of the plea agreement, Petitioner agreed to waive any right to appeal, or to collaterally attack his conviction and sentence, unless the Court imposed a custodial sentence greater than the high end of the guideline range recommended by the Government pursuant to the plea agreement.

On July 20, 2006, Magistrate Judge Anthony J. Battaglia conducted a Rule 11 of the Federal Rules of Criminal Procedure hearing and accepted Petitioner's guilty plea. Petitioner personally acknowledged that he faced a maximum sentence of twenty years in prison, one million dollars in fines, and three years of supervised release. Through an interpreter, he further acknowledged that the district court would impose a sentence after considering the advisory United States Sentencing Guidelines ("Guidelines") and that his attorney had explained how the Guidelines might apply to him. Turning to the plea agreement, Magistrate Judge Battaglia inquired whether Petitioner had signed and initialed the plea agreement after receiving a word-for-word Spanish translation, to which Petitioner answered affirmatively.

After ensuring Petitioner had no questions about the agreeInt's contents, Magistrate Judge Battaglia asked about the waiver provision. This colloquy ensued:

> THE COURT: All right. Now, there is a provision in each of the agreements that we need to discuss here in court so I'm clear you have no questions about that in particular. It is the provision that talks about the waiver of appeal and collateral attack rights that you have. Now, when we talk about appeal, we are referring to the right that you have to take your case to a higher court and ask for help because you think an error was made in how your case was handled here in the District Court. So do each of you understand that's what we're talking about when we say appeal?
> . . .
>
> THE INTERPRETER: Yes as to both.[2]

---

[1] Petitioner agreed to plead guilty to Count 1 of an Indictment charging him with aiding and abetting the importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2, and the Government agreed to dismiss a second charge after sentencing.

[2] Four defendants participated simultaneously in the Rule 11 hearing. Petitioner and a second, unidentified person occasionally answered through the interpreter.

THE COURT: And collateral attack means the ability you would have or the right you would have to challenge the fact of your conviction or sentence from this case if either becomes an issue in some other legal matter, whether that's a criminal case, a civil case, an immigration hearing, an administrative hearing, something like that. Do all of you understand that concept as I've explained it?

. . .

THE INTERPRETER: Yes as to both.

THE COURT: And from what you've agreed to in your plea agreements, you are each waiving those rights in your case, unless the court imposes a custodial sentence greater than the high end of the guideline range . . . that is recommended by the Government pursuant to the plea agreement at the time of sentencing. Do each of you understand that?

. . .

THE INTERPRETER: Yes as to both.

THE COURT: Do any of you have any questions about that provision?

. . .

THE INTERPRETER: No as to both.

Next, Magistrate Judge Battaglia ascertained that Petitioner had not been promised anything outside his plea agreement nor was he threatened into pleading guilty. Finally, after establishing the factual basis for Petitioner's guilty plea, Magistrate Judge Battaglia accepted Petitioner's plea.

Thereafter, on October 2, 2006, Petitioner appeared before this Court with new, retained counsel, Marcus E. DeBose. As a result, Petitioner was granted a continuance of his sentencing date. The Court later sentenced Petitioner to 110 months' imprisonment, and three years of supervised release on January 8, 2007.

## ANALYSIS

In his motion, Petitioner contends that his counsel performed ineffectively. Specifically, Petitioner argues that his appointed counsel, Stephen Demik, was ineffective in that he allowed Petitioner to enter into a plea agreement, which misrepresented the actual sentence the Government would be recommending, and then failed to correct the alleged misrepresentation. Petitioner also claims that his later retained counsel, Marcus E. DeBose, "was constitutionally deficient in his performance . . . when he failed to file timely [Petitioner's] Notice of Appeal after representing that he would."

...

Under the terms of the plea agreement, Petitioner agreed to waive any right to appeal, or to collaterally attack his conviction and sentence, unless the Court imposed a custodial sentence greater than the high end of the guideline range recommended by the Government pursuant to the plea agreement. *See* Plea Agreement ¶ XI.[3] During the plea proceedings, Petitioner clearly acknowledged that he understood, that by entering the plea agreement, he was waiving his rights to appeal and collateral attack.

Petitioner waived both the right to appeal and the right to collaterally attack the judgment and sentence as part of his plea agreement. Because Petitioner does not challenge the validity of the waiver, the Court finds that the waiver should be enforced. A knowing and voluntary waiver of a statutory right is enforceable. *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990). The right to collaterally attack a sentence under 28 U.S.C. § 2255 is statutory in nature, and a defendant may therefore waive the right to file a § 2255 petition. *See, e.g., United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) (by entering plea agreement waiving right to appeal sentencing issues, defendant relinquished his right to seek collateral relief from his sentence on the ground of newly discovered exculpatory evidence).

The scope of a § 2255 waiver may be subject to potential limitations. For example, a defendant's waiver will not bar an appeal if the trial court did not satisfy certain requirements under Rule 11 of the Federal Rules of Criminal Procedure to ensure that the waiver was knowingly and voluntarily made. *Navarro-Botello*, 912 F.2d at 321. Such a waiver might also be ineffective where

---

[3] The plea agreement's precise language regarding sentencing follows:
The Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory, and the court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. . . .

Defendant understands that the sentence is within the sole discretion of the sentencing judge. The Government has not made and will not make any representation as to what sentence defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court. Likewise, the recommendation made by the Government is not binding on the Court, and it is uncertain at this time what defendant's sentence will be.

Plea Agreement ¶ VIII, IX.

the sentence imposed is not in accordance with the negotiated agreement, or if the sentence imposed violates the law. *Id.*; *United States v. Littlefield*, 105 F.3d 527, 528 (9th Cir. 1996). Finally, a waiver may not "categorically foreclose" defendants from bringing § 2255 proceedings involving ineffective assistance of counsel or involuntariness of waiver. *Abarca*, 985 F.2d 1012, 1014; *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1992). In this case, none of these potential limitations on the validity of Petitioner's waiver are applicable. First of all, the record indicates that Petitioner knowingly and voluntarily entered into the Plea agreement and that the requirements of Rule 11 were adhered to. Secondly, the sentence imposed by the Court was in accordance with the negotiated agreement, and in accordance with the applicable sentencing guidelines.

In regards to Petitioner's ineffective assistance of counsel claims, the Sixth Amendment to the Constitution provides that every criminal defendant has the right to effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court enunciated the test for determining whether a criminal defendant's counsel rendered ineffective assistance. In order to sustain a claim of ineffective assistance of counsel, the petitioner has the burden of showing both: 1) that his defense counsel's performance was deficient; and, 2) that this deficient performance prejudiced his defense. *Id.* at 690-92; *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995).

To satisfy the deficient performance prong of the *Strickland* test, the Petitioner must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). In considering this issue, there is a "strong presumption that counsel's conduct falls within a wide range of acceptable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, *post-hoc* complaints about the strategy or tactics employed by defense counsel are typically found to be insufficient to satisfy the first prong of *Strickland*. *See, e.g., United States v. Simmons*, 923 F.2d 934, 956 (2nd Cir. 1991) (appellant's displeasure with strategy employed by trial counsel insufficient to establish ineffectiveness). To satisfy the second prong, a section 2255 petitioner must show that he was prejudiced by the deficient representation he received. The focus of the prejudice analysis is on whether the result of the proceeding was fundamentally unfair or unreliable because of counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Here, Petitioner has not identified any aspect of either counsel's performance that could be considered outside the range of competence demanded of attorneys in criminal cases. Petitioner signed a plea agreement in which he agreed to waive any right to appeal, or to collaterally attack his conviction and sentence, unless the Court imposed a custodial sentence greater than the high end of the guideline range recommended by the Government pursuant to the plea agreement. *See* Plea Agreement ¶ XI.  In the plea agreement, Petitioner initialed his assent that his plea was knowing and voluntary, and signed acknowledging that he fully understood the agreement's terms.  During the plea colloquy before Magistrate Judge Battaglia, Petitioner specifically agreed that he understood the concept of collateral attack, that he knew he had waived it, and that he had no questions about that waiver.  Accordingly, Petitioner's collateral attack waiver was knowing and voluntary.  Indeed, Petitioner does not contend otherwise in his petition.

Even assuming that Mr. Demik did assure Petitioner he would receive a lower sentence under the plea agreement, this would not provide Petitioner with a basis for relief. *See, e.g., United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994) (defense attorney's failure to accurately inform the defendant of the sentencing range he faced did not entitle him to challenge his guilty plea).  Also, any exchange that allegedly took place between Petitioner and Mr. DeBose regarding Petitioner's ability to appeal is irrelevant given that Petitioner had already waived his right to appeal and/or collaterally attack his conviction *prior* to his retaining Mr. DeBose as counsel.

Thus, the Court finds that none of the recognized limitations to a defendant's waiver of the right to bring a § 2255 motion are present in this case.  Therefore, the collateral attack waiver provision in Petitioner's plea agreement will be enforced.

...
...
...
...
...
...

## CONCLUSION

For the reasons set forth above, the Court finds that Petitioner has waived his right to collaterally challenge his conviction and sentence in this matter. Accordingly, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: March 24, 2008

*M. James Lorenz*
M. James Lorenz
United States District Court Judge